UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J. I. B. a minor by his mother SHALONDA BULLOCK, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 1:14-cv-01601-TWP-MJD |
| vs. | )<br>) |
| CAROLYN W. COLVIN, | )<br>) |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff J.I.B., a minor, by his mother Shalonda Bullock ("Bullock"), requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382. For the reasons set forth below, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**.

**I. Background**

J.I.B. filed his first application for SSI on September 23, 2010, alleging disability since November 1, 2001. Case No. 1:12-cv-00022-SEB-DML, [R. at 122.] On August 30, 2011, the Commissioner denied J.I.B.'s application, *id.*, [R. at 8,] and a court in this District affirmed that decision. *J.I.B. ex rel. Bullock v. Astrue*, No. 1:12-CV-00022-SEB-DML, 2013 WL 1327304, at *1 (S.D. Ind. Mar. 29, 2013).

J.I.B. filed his second application for SSI on December 16, 2011, alleging an onset of disability of August 1, 2011. [R. at 110.] In his disability report filed in conjunction with his

1

application, J.I.B. listed chronic asthma and depression as his disabling impairments.[1]  [R. at 136.]  J.I.B.'s application was denied initially on March 1, 2012 and denied on reconsideration on June 5, 2012. [R. at 57, 69.]  J.I.B. timely requested a hearing, which was held before Administrative Law Judge Daniel Mages ("ALJ") on July 9, 2013. [R. at 32.] The ALJ's August 8, 2013 decision also denied J.I.B.'s application for SSI, [R. at 7,] and on August 6, 2014 the Appeals Council denied J.I.B.'s request for review, making the ALJ's decision the final decision for the purposes of judicial review. [R. at 1.]  J.I.B. timely filed his Complaint with this Court on October 1, 2014, and the matter is now before the Court.

## II.  Legal Standard

For an individual under the age of eighteen to be eligible for SSI, a claimant must have a "disability," as defined by 20 C.F.R. § 416.924.  The Act defines disability of a child as a "physical or mental impairment, which results in marked and severe functional limitations, and . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I).  In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis: (1) if the claimant is engaged in work that qualifies as substantial gainful activity, he is not disabled regardless of his medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable, severe impairment or combination of impairments, he is not disabled; and (3) if the claimant does not have an impairment that meets, medially equals, or functionally equals a listing or does not meet the twelve-month durational requirement, he is not disabled.  20 C.F.R. §

---

[1] J.I.B. recited the relevant factual and medical background in his opening brief.  [*See* Dkt. 19.]  The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 22.]  Because these facts involve J.I.B.'s confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

416.924(a), (b); *see also Murphy v. Astrue*, 496 F.3d 630 (7th Cir. 2007); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483 (7th Cir. 2007).

In considering whether a child's impairment functionally equals a listing, the ALJ determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b), (d). In determining whether such limitations exist, the ALJ must consider the functional limitations of all medically determinable impairments, regardless of the severity of the impairment being taken into account. 20 C.F.R. 416.926a(a).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ followed the three-step child disability determination analysis and initially found that (1) J.I.B. has not engaged in substantial gainful activity since the date of application, and (2) J.I.B.'s asthma, obesity, and depression are "severe impairments," as the medical and nonmedical evidence show that the impairments have a more than minimal effect on the claimant's functioning. [R. at 13.] At step three the ALJ found that J.I.B. does not have an impairment that meets or medically equals a listing by evaluating the following: Listing 103.03 for his asthma, Listings 112.04 and 112.02B2 for his depression, and Listings 101.00Q, 103.00I, and 104.00F for his obesity. [*Id.*] Finally, the ALJ found that J.I.B's impairments did not functionally equal any listings because he does not have two markedly limited functional domains or one extremely limited functional domain. [R. at 13-27.] Accordingly, the ALJ concluded that J.I.B. is not disabled, as defined by the Act. [R. at 27.]

### IV. Discussion

On appeal, J.I.B. makes two arguments as to why the decision of the Commissioner should be reversed. [Dkt. 19.] First, he argues the ALJ failed to adequately consider J.I.B.'s low Global Assessment Functioning ("GAF") scores when determining he was not disabled. [*Id.* at 8-12.] Second, J.I.B. argues the ALJ erred when he did not request an updated medical expert opinion to determine whether J.I.B.'s impairments medically equaled a listing. [*Id.* at 13-15.]

**A. Consideration of GAF Scores**

J.I.B. argues the ALJ ignored contrary evidence in the record when determining that J.I.B. did not have a marked or extreme limitation in any of his functional domains. [Dkt. 19 at 8-11.] Specifically, J.I.B. argues the ALJ ignored his recorded GAF scores of 48 and 50 when

4

determining whether he had a marked impairment in the domains of "Interacting and Relating with Others" and "Caring for Yourself." [Dkt. 19 at 8.] The Court finds no error.

An ALJ is not bound by a claimant's GAF score when making his disability determination. The Seventh Circuit has explained:

> GAF scores . . . are useful for planning treatment, and are measures of both severity of symptoms *and* functional level. Because the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity. Accordingly, nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.

*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (emphasis in original) (citations omitted). Thus, an ALJ who supports his disability determination with substantial evidence does not commit reversible error by failing to give controlling weight to a claimant's GAF score.[2] *See id*.

Furthermore, contrary to J.I.B.'s assertions, the ALJ **did** consider J.I.B.'s GAF scores when making his disability determination. The ALJ wrote:

> I also note the claimant's attorney points to a Global Assessment of Functioning (GAF) score of 48 as evidence his client is disabled. In this regard, I note this was on June 9, 2011, during the period of a prior ALJ decision upheld by Appeals Council and the Federal District Court. In addition, the claimant's GAF score has been 52 since filing the current application. A GAF score of 51 through 60 indicates moderate symptoms or difficulties (*Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th Ed. 1994)), and is consistent with this decision.

[R. at 19-20.] Thus, the ALJ explained that he discounted J.I.B.'s two low GAF scores because they were considered in J.I.B.'s first disability claim and were outside the

---

[2] Other than his GAF scores, J.I.B.'s brief cites no other evidence in the record that the ALJ allegedly ignored when making his decision. [Dkt. 19 at 8-11.] Instead, J.I.B. makes the general argument that the ALJ did not consider evidence contrary to his decision. [*Id.*]; *see Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). Arguments that are not raised or are raised in skeletal form and not developed are waived. *Id.* While J.I.B. cites to other evidence in the record that the ALJ allegedly ignored in his reply brief, arguments first raised in a reply brief are waived. *Rives v. Whiteside Sch. Dist. No. 115,* 575 F. App'x 678, 680 (7th Cir. 2014). Therefore, the Court limits its analysis to whether the ALJ erred with regard to his consideration of J.I.B.'s GAF scores.

5

timeframe of the claim at issue.[3] *Compare* [R. at 110 (alleging onset of disability on August 1, 2011), *with* R. at 245 (GAF score on June 9, 2011); R. at 270-72 (GAF score on July 28, 2010).] Instead, the ALJ noted that J.I.B.'s GAF score since the alleged onset of his disability in August 1, 2011 was 52, which indicates only moderate symptoms or difficulties. [R. at 20; *see also* R. at 444, 447, 458.] This reasoning supports the ALJ's finding that J.I.B. is not disabled. Thus, the Court finds the ALJ properly considered J.I.B.'s GAF scores when making his finding.

### B. Equivalency Determination

Next, J.I.B. argues the ALJ erred when he failed to request an updated opinion from state agency reviewing physicians before determining J.I.B.'s depression did not medically equal Listing 112.04. An ALJ is required to obtain an updated medical opinion only "when additional medical evidence is received that in the opinion of the [ALJ] may change the State agency's medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Buckhannon ex rel J.H. v. Astrue,* 368 F. App'x 674, 679 (7th Cir. 2010); SSR 96–6p. While an ALJ must **consider** a medical expert opinion when determining whether a claimant's impairments medically equal a listing, "the responsibility for **deciding** medical equivalence rests with the administrative law judge." 20 C.F.R. § 404.926(c), (e) (emphasis added). An ALJ's decision to obtain or not obtain an updated medical opinion is "discretionary in nature." *Wilson ex rel. J.D. v. Colvin*, 48 F. Supp. 3d 1140, 1150 (N.D. Ill. 2014).

---

[3] Once an appeal of a Commissioner's disability determination has been fully adjudicated in federal court, claim preclusion prevents the claimant from refiling a disability claim for the same time period. *Rucker v. Shalala*, 894 F. Supp. 1209, 1217 (S.D. Ind. 1995) *aff'd sub nom. Rucker v. Chater*, 92 F.3d 492 (7th Cir. 1996). Thus, to the extent J.I.B. is trying to re-litigate the issue of the Commissioner's disability determination for the time period prior to August 30, 2011, that claim is precluded.

In order to medically equal Listing 112.04, a claimant must satisfy the requirements of both the "A" and "B" criteria. 20 C.F.R. pt. 404, subpt. P, App. 1. To satisfy the "B" criteria, a claimant must have a marked impairment in two of the following functional domains: age-appropriate cognitive/communicative functioning, age-appropriate social functioning, age-appropriate personal functioning, and ability to maintain concentration, persistence, or pace. The ALJ concluded that J.I.B.'s depression did not medically equal a listing because his depression "has not resulted in at least two of the appropriate age-group criteria." [R. at 13.] In explaining his decision that J.I.B.'s depression did not **medically** equal a listing, the ALJ expressly referred to his discussion of the evidence in his section analyzing whether J.I.B.'s impairments **functionally** equaled a listing. [R. at 13 ("Based upon the discussion below [J.I.B.] does not have a marked impairment in" two of the functional areas listed in the "B" criteria.).] An ALJ's explanation in one part of his opinion can provide substantial evidence for the ALJ's decision in another part of his opinion. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Thus, when analyzing whether the ALJ had substantial evidence for not requesting an updated medical opinion, the Court "read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue,* 368 F. App'x 674, 678–79 (7th Cir. 2010).

The Court finds the ALJ provided substantial evidence that J.I.B.'s depression did not satisfy the "B" criteria of Listing 112.04. First, with regard to social functioning, the ALJ noted J.I.B. has age appropriate friends with whom he has regular contact, plays basketball daily with his neighbors, and is involved with the Boy Scouts. [R. at 23-24.] Next, in personal functioning, the ALJ determined J.I.B. could dress, bathe, and groom himself, could perform chores around the house, including doing his laundry once a week, and could follow safety rules and control his

impulses. [R. at 26.] Furthermore, in terms of cognitive and communication skills, the ALJ found that J.I.B. received average grades in school, had "intact memory, similarities/differences, information, judgment/insight, and calculation abilities," had a normal speech flow, and engaged in appropriate interpersonal interactions. [R. at 21, 23.] Finally, regarding J.I.B.'s concentration, the ALJ noted the consultative examinations indicated that J.I.B. had no trouble with concentration, attention, and focus, and J.I.B. completed 100% of his homework. [R. at 22.] Thus, the ALJ had substantial evidence to conclude J.I.B. did not have a marked impairment in any of the four functional domains of the "B" criteria.

In addition, the ALJ cited to the opinions of four state agency reviewing consultants and a psychological consultive examiner to support his conclusion that J.I.B.'s impairments did not equal a listing. These opinions were produced on January, 23, 2012; March 1, 2012; and June 5, 2012. [R. at 19, 283-88, 304-308.] J.I.B. argues the ALJ could not rely upon these opinions because the experts did not consider evidence that was added to the record after June, 5, 2012.[4] Thus, J.I.B. contends, the ALJ erred when he failed to obtain updated medical opinions that considered the additional evidence in the record. The Court disagrees.

The additional records cited by J.I.B. discuss his ongoing struggle with anger and depression. [*See e.g.*, R. at 407, 422.] These are not new issues, but rather reflect the same impairment and symptoms from which J.I.B. had continually been alleged to suffer. [*See e.g.*, R. at 274 ("he wanted to kill himself, and he was real sad and depressed . . . ."); R. at 15 (On December 27, 2011 . . . [the claimant] reported that he had problems listening to his mother without getting mad, ignored others, at times called other names and teased people . . . .").]

---

[4] Specifically, J.I.B. notes the experts did not consider his psychotherapy notes from June 20, 2012 [R. at 407,] August 8, 2012 [R. at 422-23,] September 10, 2012 [R. at 427,] and January 20, 2013 [R. at 464-87.] Furthermore, J.I.B. notes the experts did not consider his school disciplinary referral from December 5, 2012. [Dkt. 19 at 13.]

Because the evidence that post-dated the medical opinions in the record reported similar symptoms to the ones the medical experts had already considered, it is unlikely the new information would have changed their determinations. *Cf. Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1003-04 (N.D. Ill. 2010) (finding the ALJ erred in not requesting an updated medical opinion when new evidence suggested that claimant suffered from a **new impairment** that the original medical opinions did not consider).

Furthermore, the ALJ addressed much of the evidence in the record that post-dated the medical opinions when explaining his decision. [R. at 17 ("the school records show that claimant had a bad day at school on December 5, 2012"); R. at 26 (J.I.D. "apparently made a statement in class that he wanted to kill himself, but through processing during his therapy session he found that it was something he said while he was angry."); *Id.* (J.I.B. "continued to experience difficulty with one peer in his classroom.").] Nevertheless, the ALJ concluded J.I.B.'s depression did not medically equal a listing. Thus, the ALJ properly considered "all of the evidence in [J.I.B.'s] case record," including evidence that post-dated the medical opinions, when determining J.I.B's depression did not medically equal a listing. 20 C.F.R. § 404.926(c)

Finally, J.I.B., who was represented by counsel, did not ask the ALJ to obtain an updated medical opinion or submit his own medical opinion to support his position. "Where a claimant represented by counsel neither asks the ALJ to recontact the state-agency consultants nor submits any opinion from a treating physician, the 'appropriate inference is that [the claimant] decided that another expert opinion would not help him.'" *Trammell v. Colvin*, No. 12 CV 6780, 2014 WL 1227565, at *7 (N.D. Ill. Mar. 25, 2014) (quoting *Buckhanon ex rel. J.H.* 368 F. App'x at 679). Thus, the ALJ properly considered the "uncontradicted opinions of state-agency consultants" when determining whether J.I.B.'s depression medically equaled a listing.

9

In sum, the ALJ had substantial evidence for concluding J.I.B.'s depression did not medically equal a listing. Furthermore, the ALJ did not err when he failed to request an updated medical opinion because the additional record evidence related to the same impairment and symptoms, the ALJ considered the additional evidence in the record when making his decision, and J.I.B. did not ask the ALJ to request an updated medical opinion or provide his own medical opinion to support his position. Thus, the Court finds the ALJ did not err in determining that J.I.B.'s depression did not medically equal a listing.

### V.  Conclusion

For the aforementioned reasons, the Magistrate Judge recommends the decision of the Commissioner be **AFFIRMED**.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  13 NOV 2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov